UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| O.O.L.G. a minor, by his next friend, Ms. L.O.L.G., | |
| Plaintiff, | Case No. 18-cv-6307 |
| v. | |
| JEFFERSON B. SESSIONS, III, Attorney General of the United States, *et al.*, | Judge John Robert Blakey |
| Defendants. | |

ORDER

This matter comes before this Court on Defendants' Motion to Reconsider Temporary Restraining Order [8]. For the reasons stated below, this Court denies Defendants' motion to reconsider.

Procedural Background

Four months ago, Plaintiff O.O.L.G. and his sister L.O.L.G. fled alleged threats of violence in Honduras to pursue asylum in the United States. [1] at ¶¶ 1, 74−78. Plaintiff is a 10-year-old minor. *Id.* at ¶ 1. L.O.L.G. is his adult sister and has been Plaintiff's sole caregiver for the past eight to nine years; Plaintiff and his sister were abandoned by their parents when he was still breastfeeding and L.O.L.G. was approximately 10 or 11 years-old. [5-1] at 3. After crossing the U.S.-Mexico border in June of 2018, they were initially detained together, but then forcibly separated five days later and detained in facilities hundreds of miles apart. *Id.* at 4−5. Plaintiff has not seen his sister since. *Id.*

Plaintiff is currently in the care and custody of the United States Department of Health and Human Services (HHS) Office of Refugee Resettlement (ORR) at the Heartland International Children's Rescue in Chicago, Illinois, *id.* at 10, while L.O.L.G. is currently detained by U.S. Immigration and Customs Enforcement (ICE) at the Port Isabel Processing Center in Los Fresnos, Texas, *id.* at 3−4. L.O.L.G. failed her credible fear interview after she was separated from L.O.L.G., and an immigration judge affirmed that negative finding in a brief hearing. *Id.* L.O.L.G. filed a motion for reconsideration on August 28, 2018 and expects a

decision at any time; if denied, she is at risk for immediate "removal," or deportation, without Plaintiff within hours to days. *Id.* at 3 n.1.

On September 14, 2018, Plaintiff filed this civil action pursuant to Paragraph 24(B) of the Flores Settlement Agreement (FSA), arising from longstanding litigation in the matter of *Flores v. Sessions*, CV-85-4544 (C.D. Cal.), and pursuant to alleged violations of the Due Process Clause of the Fifth Amendment. [1]; [5-1] at 13.

On September 17, 2018, Plaintiff filed an *ex parte* emergency motion for a temporary restraining order requesting, among other things, that this Court enter a temporary order prohibiting ICE from removing L.O.L.G. from the United States without Plaintiff. [5].

On September 18th, 2018, this Court held an *ex parte* hearing in light of the emergency nature of the request and the unsuccessful attempts by Plaintiff's counsel to provide timely notice, and upon consideration, this Court found that Plaintiff met his burden with regard to likelihood of success on the merits, inadequate remedy at law/irreparable harm, the balancing of harms on a sliding scale and the public interest with regard to the removal of L.O.L.G. without him. [10]. Upon Plaintiff's own withdrawal, the Court did not consider the remaining relief requested by Plaintiff in the Emergency Motion for Temporary Restraining Order. *Id.*

Immediately following this Court's temporary order on September 18th, 2018, Defendants filed an emergency motion for reconsideration [8]. They then filed a supplemental memorandum [15] in support on September 19th, 2018. After a hearing on September 19th, 2018, this Court granted Defendants leave to file an amended memorandum in support of its emergency motion for reconsideration, which they submitted on September 21, 2018 [18]. Plaintiff filed a response [20] on September 25, 2018 and Defendants filed a sur-reply [22] on September 27th, 2018, after which this Court held another hearing and took Defendants' motion for reconsideration [8] under advisement.

## Legal Analysis

Motions to reconsider are generally disfavored. *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015). The Federal Rules of Civil Procedure allow a court to alter or amend a judgment only if the moving party can demonstrate "a manifest error of law or present newly discovered evidence." *Flint v. City of Belvidere*, No. 11-CV-50255, 2014 WL 11397797, at *1 (N.D. Ill. June 17, 2014) (citing *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008)). A party asserting such an error "bears a heavy burden." *Patrick*, 103 F. Supp. 3d at 912. A "manifest error" is not demonstrated merely "by the disappointment of the losing party." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). It is the "wholesale disregard, misapplication, or failure to recognize controlling precedent."

*Id.* Such error occurs when a district court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Patrick*, 103 F. Supp. 3d at 912 (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). As such, Defendants must show that this Court made manifest errors of law or fact or that they have new evidence.

Defendants argue that Plaintiff's motion should be reconsidered and denied because "this Court is entirely without jurisdiction to grant the relief requested therein." [18] at 9. Specifically, Defendants argue that "Plaintiff's Motion asks for this Court to review and cease the expedited removal of a third party to this litigation," (L.O.L.G.), and that this Court does not have jurisdiction to review a final order of expedited removal. *Id.* at 9−10.

This Court disagrees. Importantly, Plaintiff is not asking that this Court "review and cease" Ms. L.O.L.G.'s removal order. Instead, they are merely requesting that this Court *temporarily* prohibit ICE from removing Plaintiff's sister—his sole caregiver—from the U.S. *without* Plaintiff. [5-1] at 14. And despite Defendants' arguments to the contrary, this Court has jurisdiction to effectuate such a temporary order due to the nature of Plaintiff's claims.

Given that the issue of migrant family separation remains an evolving issue as it continues to be litigated in this country, *see generally Ms. L. v. U.S. Immigration and Customs Enf't*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018), there are admittedly few cases addressing this issue presented here. The cases that do address the issue generally, however, demonstrate this Court's jurisdiction to grant Plaintiff's request that his sister not be removed without him.

First, in a similar family separation case, an Illinois federal court entered a preliminary injunction order prohibiting the removal of two fathers (detained in New Mexico) from being removed from the U.S. without their minor, separated sons (detained in Chicago) pending the resolution of their preliminary injunction request for reunification:

> On June 29, 2018, the Court ordered that Defendants and their officers, agents, servants, employees, attorneys, and all those who are in active concert or participation with them, are preliminarily enjoined from removing from the United States either [name redacted] without W.S.R. or [name redacted] without C.D.A. At that point, the government had not articulated a legitimate interest in removing the fathers from the country without their sons. *Id.* That remains true to this day, and the government did not move to dissolve this relief.

*WSR v. Sessions*, 318 F. Supp. 3d 1116, 1134 (N.D. Ill. 2018) (internal citations omitted).

3

Moreover, a D.C. district court recently confronted a similar situation in which the underlying plaintiff and her minor son fled Guatemala to pursue asylum in the U.S. and were forcibly separated and detained in facilities in Texas and New York, respectively. *M.G.U. v. Nielsen*, 316 F. Supp. 3d 518, 519 (D.D.C. 2018). There, the underlying plaintiff was subject to a final order of removal.

In large part because the defendants in *M.G.U.* provided "no assurance that Ms. E.F. and her nine-year-old son will be reunited before Ms. E.F. is removed from the country," the court was "deeply trouble[d]" by the risk that the plaintiff would be "removed from the United States without her young son and without her valid consent to be removed without her son, before the Court has an opportunity to rule on her preliminary injunction motion seeking immediate reunification with him." *M.G.U.*, 316 F. Supp. 3d at 520. Thus, in "light of the urgent need to preserve the status quo" until after the Court could make a "determination on the merits of Ms. E.F.'s preliminary injunction motion," the court construed plaintiff counsel's oral motion for an order that she not be removed from the country before she is reunited with her son as a motion for a temporary restraining order. *Id.* (citing *Barrow v. Graham*, 124. F. Supp. 2d 714, 715–17 (D.D.C. 2000)). The court then granted the TRO, citing the fact that the plaintiff may succeed on the merits of her substantive due process claim for family integrity, as well as the fact that she is a member of the class in the action pending before the Southern District of California, *Ms. L. v. U.S. Immigration and Customs Enf't*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018). *Id.* at 522. Finally, in response to the government's argument that a TRO would disrupt the process in place for immigration authorities to make removal decisions, the court stated that the TRO would merely "briefly stay their hand while the Court assesses the merits" of the plaintiff's claim, noting that "there is a much weightier interest in ensuring that defendants do not impermissibly deprive immigrant parents of their due process rights under the Constitution." *Id.*

This Court likewise has jurisdiction to briefly stay immigration authorities' hand while it assesses the merits of Plaintiff's claim. As the court in *M.G.U.* recognized, this Court is not reviewing the merits of, nor ceasing, the underlying issues arising within the expedited removal of L.O.L.G. *Id.* ("All that is involved is the preservation of the status quo for a short period of time until the Court can make a determination on the merits, so any possible disruption to defendants will be minimal."). Nor have Defendants articulated any "legitimate interest" in immediately removing L.O.L.G. without her brother. *WSR*, 318 F. Supp. 3d at 1134. Instead, this Court is simply temporarily prohibiting L.O.L.G. from being removed without Plaintiff while it reviews Plaintiff's due process and FSA claims—which it has jurisdiction over—directly relating to their separation. *See e.g.*, *M.G.U. v. Nielsen*, 2018 WL 3474189, at *4, No. 18-1458 (PLF) (D.D.C. July 18, 2018) (exercising federal question jurisdiction to reunify a plaintiff and her separated son based upon her substantive due process claims); *W.S.R.*, 318 F. Supp. 3d at 1123 (exercising federal-question jurisdiction to reunify the separated fathers and sons based upon their substantive due process claims); *id.* at 1129 (finding the court had

4

jurisdiction to decide plaintiffs' *Flores* claims under ¶ 24(B) because the Agreement allows district courts "around the Nation to consider [minors'] individual challenges to the government's placement determination"); Flores Agreement, CV-85-4544 at ¶ 14 (stating that when the INS determines that the detention of a minor is not required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that of others, the INS shall release a minor from its custody to his or her legal parent, legal guardian, or with another adult family member, including a sister, in order of descending preference).

Defendants also argue that 8 U.S.C. § 1252(a)(2)(B)(ii) bars this Court from exercising subject matter jurisdiction over Plaintiff's claims. But the very case they cite for the principle that there is no due process right to family visitation in immigration detention, *Aguilar v. ICE*, 510 F.3d 1, 20–22 (1st Cir. 2007), says otherwise. In *Aguilar*, the First Circuit held:

> [S]ection 1252(a)(2)(B)(ii) does not strip the district courts of jurisdiction over substantive due process claims that are collateral to removal proceedings when those claims challenge decisions about the detention and transfer of aliens on family integrity grounds.

510 F.3d at 21. Here, Plaintiff does challenge ICE's decisions about his detention and transfer on family integrity grounds, and thus Section 1252(a)(2)(B)(ii) does not strip this Court's jurisdiction.

And while the First Circuit ultimately dismissed plaintiffs' substantive due process claims for failure to satisfy Federal Rule of Civil Procedure 12(b)(6), *Aguilar* is factually distinguishable in that respect. As the *Ms. L.* court recently noted, none of the plaintiffs in *Aguilar* appear to have been detained at any time *with their children*. 302 F. Supp. 3d 1149, 1163 (S.D. Cal. 2018). Instead, *Aguilar*, as well as an additional case Defendants cite in opposition to Plaintiff's due process argument, *Milan-Rodriguez v. Sessions*, No. 16-cv-01578, 2018 WL 400317 (E.D. Cal. Jan. 12, 2018), involved challenges to a parent's detention and transfer away from children who were not themselves initially detained with their parents. *Ms. L.*, 302 F. Supp. 3d at 1162–63. Here, as in *Ms. L.*, Plaintiff was initially detained with his sister, and the two sought asylum together. [1] at ¶ 79. And while Defendants argue that a sibling caregiver is less compelling than a parent caregiver for purposes of determining a constitutional right, [18] at 23–24, a final determination on that issue (beyond consideration under the "likelihood of success on the merits" factor) is not necessary at this preliminary and temporary stage of the proceedings, especially when a child is at risk of permanent separation from what the parties do not dispute is the only parental figure in his life. *M.G.U.*, 316 F. Supp. 3d at 522 ("Given the danger that, upon removal, the Court could lose the ability to adjudicate Ms. E.F.'s motion for a preliminary injunction seeking reunification, it follows that Ms. E.F.'s removal from the country without her son *could* undermine her rights.") (emphasis added); *see also Aristotle P. v. Johnson*, 721 F. Supp. 1002, 1007 (N.D. Ill. 1989) ("Supreme Court and subsequent Seventh Circuit caselaw provides further

support for the proposition that the Fourteenth Amendment embraces a right to associate with one's relatives.") (citing *Moore v. East Cleveland*, 431 U.S. 494, 500−504 (1977) (plurality opinion)); *Mayo v. Lane*, 867 F.2d 374, 375 (7th Cir. 1989).

Consistent with this Court's earlier findings, Plaintiff has met his burden with regard to likelihood of success on the merits, inadequate remedy at law/irreparable harm, the balancing of harms on a sliding scale and the public interest with regard to the removal of L.O.L.G. without him. In particular, removing L.O.L.G.—minor Plaintiff's sole caregiver—from the country without him, and without first considering the merits of his federal claims, would undoubtedly constitute irreparable harm. As such, this Court denies Defendants' motion to reconsider its prior order [8] relating to L.O.L.G.'s removal.

Dated: October 2, 2018          Entered:

United States District Judge